IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN MARTIN, #249790 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. L-10-1313 |
| CORRECTIONAL MEDICAL SERVICES, INC. | * | |
| WARDEN J. PHILIP MORGAN | * | |
| COMMISSIONER J. MICHAEL STOUFFER ISAIAS TESSEMA | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

I.  PROCEDURAL HISTORY

This 42 U.S.C. § 1983 civil rights Complaint was received for filing on May 24, 2010. ECF No. 1. Plaintiff, an inmate at the Western Correctional Institution ("WCI") in Cumberland, Maryland, states that in November of 2009 he was sent to an outside physical therapist who determined that his left knee was "damaged for good." He claims that since that time he has filed many sick-call encounter forms and nothing has been done for his knee. Plaintiff alleges that he was told he needs a heel lift for his shoe so he can walk normally and without pain and requires treatment for a "bowed" leg resulting from the knee problem. In attachments to the Complaint, he asserts that thus far he has been treated only with ibuprofen and hot packs.[1] He affirms that he has not seen an orthopedic specialist as requested. Plaintiff seeks punitive damages for pain and suffering. Id.

---

[1] The attachments to the Complaint are primarily comprised of Plaintiff's administrative remedy grievances from 2009 and 2010. ECF No. 1 at Attachments. All materials relate to his leg (knee and heel) condition.

On October 29, 2010, Plaintiff sought to amend his Complaint. He asked that the Secretary of the Department of Public Safety and Correctional Services be "dropped" from the case and that Western Correctional Institution Warden J. Phillip Morgan, Commissioner J. Michael Stouffer, and Regional Medical Director Isaias Tessema be added as Defendants. ECF No. 23. The Motion was granted on November 4, 2010. ECF No. 25.

II. PENDING MOTIONS

Currently pending before the Court are unopposed Motions to Dismiss or in the Alternative, Motions for Summary Judgment filed on behalf of Defendants Morgan, Stouffer, Correctional Medical Services, Inc. ("CMS"), and Tessema. ECF Nos. 26 and 36. The undersigned has examined the records and declarations submitted by the parties and finds that no hearing is necessary. See Local Rule 105.6. (D. Md. 2011). For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, shall be granted.

III. STANDARD OF REVIEW

Under revised Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. See Anderson, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." Shin v. Shalala, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. See Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting Felty v. Graves-Humpreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV. DISCUSSION

1. Facts

According to the medical Defendants, Plaintiff injured his left knee in 1984 or 1985. He underwent an open reduction and internal fixation ("OPRIF"), including having two screws inserted to stabilize the knee. Hubert Mickel, M.D. ("Dr. Mickel") evaluated Plaintiff for his complaints of left knee pain on June 29, 2009. Dr. Mickel prescribed ibuprofen for pain relief. Plaintiff asked for permission to purchase his own shoe insoles for arch support. Dr. Mickel noted that Plaintiff could purchase his own insoles; however, they are not available in the Commissary and cannot be brought in from outside the institution without approval from the prison custody unit. ECF No. 36, Ex. A and Ex. B, pp. 1, 4, 6, 21-22, 65-67.

Plaintiff filed numerous sick call and administrative remedy requests concerning pain in his left knee and repeatedly requested that the screws be removed. On August 3, 2009, Renato Espina, M.D., ("Dr. Espina") prescribed Naprosyn, a non-steroidal anti-inflammatory medication ("NSAID") and discontinued Plaintiff's ibuprofen prescription. He ordered an x-ray, which was taken on August 7, 2009. The x-ray showed minimal degenerative joint disease ("DJD") of the knee and showed no changes from an x-ray taken on September 12, 2008. On August 14, 2009, Dr. Espina submitted a request for Plaintiff to be seen by an othopedic surgeon. On August 25, 2009, he referred Plaintiff for physical therapy. Id., Ex. A, Ex. B, pp. 1-7, 10, 12 & 67.

On September 3, 2009, Dr. Mickel submitted a Consultation Request for Plaintiff to receive physical therapy ("PT"). Dr. Mickel also renewed Plaintiff's prescription for Naprosyn and added ibuprofen to assist in pain management. Plaintiff was evaluated for PT on October 1, 2009, diagnosed as suffering from degenerative joint disease, and began PT that same day. Id., Ex. A and Ex B, pp. 14-17 and 68-69.

On October 13, 2009 and December 8, 2009, Dr. Mickel submitted additional consultation requests for Plaintiff to be seen by an orthopedic surgeon. Requests for on-site and off-site consultants are reviewed by Wexford Health Sources, Inc. ("Wexford"). Wexford's utilization review panel, consisting of Wexford's own health care providers, must give approval. The medical Defendants named herein are not affiliated with Wexford, nor have any control over Wexford's approval process. Id. Ex. A and B, pp. 18-20, 23.

On or about December 8, 2009, Dr. Mickel discontinued Plaintiff's Naprosyn prescription but continued him on ibuprofen. Dr. Mickel also prescribed Neurontin, a medication that treats neuropathic pain. Id. A and B, pp. 70-74.

On November 19, 2009, Physical Therapist Stephen D. Ryan noted that Plaintiff has a ½ inch leg length discrepancy, the right leg being longer. On January 27, 2010, Dr. Espina recommended a heel lift for Plaintiff. Dr. Tessema avers that a one-half inch discrepancy might or might not cause problems for Plaintiff when walking. Id. Ex. A and B, p. 83.

Plaintiff was evaluated by Robert Cendo, M.D. ("Dr. Cendo"), an orthopedic surgeon, on February 3, 2010. Dr. Cendo noted that he could remove the screws from Plaintiff's left knee to relieve the pain caused by them rubbing under the skin. Dr. Cendo, however, did not conclude that it was medically necessary to remove the screws. To the contrary, Dr. Cendo advised that the removal of the screws would not improve Plaintiff's joint pain, although he did note that the distal femoral screw appeared to be loose. On February 22, 2010, Beverly Sparks, PAC ("P.A. Sparks") requested Plaintiff be assigned to a bottom bunk because of his knee pain. On February 28, 2010, Greg Flury, PAC ("P.A. Flury") discontinued Plaintiff's prescription for Naprosyn and prescribed indomethacin, another type of NSAID, for Plaintiff's knee pain. Id., Ex. A and B, pp. 30, 33-34, 36, and 75-76.

On March 25, 2010, Dr. Mickel noted that although Plaintiff was scheduled for surgery with Dr. Cendo to remove the screws from his left knee, Dr. Cendo was not performing surgery at that time. Thus, another orthopedic surgeon would have to evaluate Plaintiff. Dr. Mickel submitted a consultation request for a different orthopedic surgeon to evaluate Plaintiff. Dr. Mickel also added Lyrica to Plaintiff's pain medication regimen to treat his nerve pain. Id. A and B, pp. 42-43 and 77-78.

On April 24, 2010, Plaintiff was again evaluated by P.A. Flury for his complaint of left knee pain. In response to Plaintiff's request to resume PT in order to strengthen the muscles in his knee, P.A. Flury submitted a consultation request for Plaintiff to receive additional PT and ordered another x-ray of Plaintiff's left knee. The x-ray was performed on April 29, 2010, and showed moderate degenerative changes with osteophyte formation. The x-ray also showed that the orthopedic hardware in Plaintiff's knee was intact, not loose. Id., Ex. A and B, pp. 51-55.

Plaintiff was next evaluated in sick call on May 6 and May 20, 2010. Plaintiff again requested PT and continued to complain of pain in his left knee. On May 20, 2010, Dennis Martin, R. N. ("Nurse Martin") examined Plaintiff and observed that he was in no distress, able to bear full weight, and able to walk with a normal gait. Colin Ottey, M.D. ("Dr. Ottey") evaluated Plaintiff on May 25, 2010, at which time Plaintiff complained of pain, locking, and stiffness in his left knee and numbness in his leg. Dr. Ottey renewed Plaintiff's pain medications. Id., Ex. A and B, pp. 58-61.

Dr. Ottey again evaluated Plaintiff on June 9, 2010. Plaintiff told Dr. Ottey his knee pain was aggravated by descending stairs and walking and relieved by heat and PT. Dr. Ottey renewed Plaintiff's Neurontin prescription and continued his other treatment and medications. Id., Ex. A and B, pp. 62-63.

Plaintiff received PT from October 1, 2009 to March 30, 2010, at which time the therapist discharged Plaintiff from PT finding he had reached optimum benefit. Plaintiff restarted PT on June 17, 2010, at his request, and continued it until October 14, 2010, when he was discharged as having reached optimum benefit. Id., Ex. A and B, pp. 64, 79-109, 120, 125-128, 130, 132-134 and 137-140.

Plaintiff's complaints of knee pain and requests to remove the screws from his knee continued. On June 15, 2010, Dr. Ava Joubert ("Dr. Joubert") noted that physical therapy had been approved by Wexford, but in light of a normal x-ray there did not appear to be cause for surgery. Id., Ex. B, p. 64. On July 27, 2010, Dr. Tessema likewise noted that in light of the April 29, 2010 x-ray showing that the hardware was intact, there did not appear to be any medical reason to remove the screws from Plaintiff's knee. Id., Ex. A and B, pp. 110-114, 116, 135-141.

Plaintiff continued requests that the screws be removed from his knee. On September 26, 2010, Dr. Ottey submitted a consultation request for Hanger Prosthetics ("Hanger"), a private company that provides prosthetic and orthopedic appliances to patients, to evaluate Plaintiff for his leg length discrepancy and construct a heel lift for him. Wexford denied the consultation. Instead, Wexford recommend onsite orthotics. On October 1, 2010, Lloyd Hott, P.T.A. ("Physical Therapist Hott") noted Plaintiff would benefit from a ½ inch heel lift in his left shoe. Id., Ex. A and B, pp. 121-124, 129, 131.

On November 3, 2010, Plaintiff questioned why his physical therapy had been discontinued. Ava Joubert, M.D. and P.A. Sparks advised Plaintiff his physical therapy goals had been met and there was no medical indication for him to continue to receive treatments. On November 5, 2010, Plaintiff received a heel cushion splint. On November 17, 2010, Plaintiff advised P.A. Sparks that the heel lift was not working and requested additional physical therapy.

Physical Therapist Ryan informed P.A. Sparks that he had recommended a one half inch heel lift for Plaintiff and again noted that Plaintiff had met his physical therapy goals on October 14, 2010. Id., Ex. A and pp. 143-147. As of the filing of Medical Defendants' dispositive motion Plaintiff continued to receive Amitriptyline, ibuprofen and Neuorotin for his knee pain. Id., Ex. A and B, pp. 149-154.

In their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Division of Correction ("DOC") Defendants Morgan and Stouffer seek dismissal of the case based upon Plaintiff's failure to state a claim upon which relief may be granted and to demonstrate a genuine dispute of material fact. ECF No. 26. Case Management Specialist Tennille Winters avers that Plaintiff filed an ARP on November 22, 2009 concerning left knee pain. The request was dismissed on February 5, 2010, with a notation that Plaintiff was seen by orthopedic surgeon Dr. Cendo on February 3, 2010. ECF No. 25, Ex. 1, p. 1-4.

2. Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De-Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either

provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995) quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown 240 F.3d at 390; citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth

9

Amendment liability is not present. Id. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

As a fundamental element of § 1983 liability, Plaintiff must show that Warden Morgan and Commissioner Stouffer were involved in the alleged deprivation of his constitutional rights. See Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1997) (doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 actions). It remains uncontroverted that neither Stouffer nor Morgan had direct involvement in Plaintiff's medical treatment or any aspect of his health care. In addition, § 1983 supervisory liability on the part of Defendants Stouffer and Morgan require a showing that: "they failed promptly to provide an inmate with needed medical care, [they] deliberately interfered with the prison doctors' performance, or tacitly authorized or were indifferent to the prison physicians' constitutional violations." Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); see also Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984) (supervisory liability for an inmate's beating by prison guards).

The Complaint against the medical Defendants fares no better. The record shows that Plaintiff has received evaluation and treatment for his knee pain including but not limited to diagnostic testing, physical therapy, assistive devices, and pain medication. Medical staff has determined that he has no need for surgery at this time, that the hardware in his knee is intact, and that any surgery to remove the hardware would not resolve his joint pain. Any delay in providing Plaintiff with the prescribed orthotic and/or orthopedic consultation was due to delays by Wexford, the health care utilization reviewer, not by the named medical providers. It appears that Plaintiff, contrary to his health care providers, believes that surgery to remove the hardware is necessary. Such a disagreement with the course of treatment does not constitute an Eighth

10

Amendment deprivation and would set out, at best, a claim of medical negligence which is not actionable under 42 U.S.C. § 1983.

V. CONCLUSION

For the aforementioned reasons, the Court finds no Eighth Amendment violations. Defendants' Motions, construed as motions for summary judgment, shall be granted. A separate Order follows.

August 3, 2011 /s/
_____
Benson Everett Legg
United States District Judge